**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**NICHOLAS SERVICES, LLC**                                                 **PLAINTIFFS**
**d/b/a Nicholas Air; and NICHOLAS
JOHN CORRENTI**

**V.**                                                          **NO. 3:25-CV-117-DMB-JMV**

**CELLCO PARTNERSHIP d/b/a
Verizon Wireless**                                                     **DEFENDANT**

**ORDER**

Cellco Partnership d/b/a Verizon Wireless moves to compel arbitration of the claims asserted against it by Nicholas Services, LLC d/b/a Nicholas Air, and Nicholas John Correnti. Because such claims are within the scope of a valid agreement to arbitrate, arbitration will be compelled.

**I
Procedural History**

On April 10, 2025, Nicholas Services, LLC d/b/a Nicholas Air, and Nicholas John Correnti filed a complaint against Cellco Partnership d/b/a Verizon Wireless ("Verizon") in the United States District Court for the Northern District of Mississippi, asserting violations of the Telecommunications Act, the Stored Communications Act, the Computer Fraud and Abuse Act the Mississippi Constitution, and the Mississippi Consumer Protection Act; breach of contract; negligence; gross negligence; negligent hiring, training and/or supervision; and negligent misrepresentation—all based on allegations that Verizon's failure to protect their privacy and identity resulted in an unauthorized person's theft of cryptocurrency owned by Correnti.[1] Doc.

---

[1] Specifically, the plaintiffs allege that "[o]n or about October 31, 2022, … Nicholas Air purchased the iPhone at issue … and entered into a contract with Verizon for a business account;" "Correnti is the owner of Nicholas Air and an authorized user of the iPhone and Verizon Account … for both business and personal purposes;" "[i]n or around

#1. On these claims, the plaintiffs request at least $500,000 in compensatory damages, pre-judgment interest, and post-judgment interest. *Id.* at 26.

On June 2, Verizon filed a motion to compel arbitration and stay these proceedings.[2] Doc. #11. The same day, Verizon also filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a),[3] Doc. #13; and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[4] Doc. #16. The next day, quoting Local Rule 16(b)(3)(B), United States Magistrate Judge Jane M. Virden "stay[ed] the attorney conference and disclosure requirements and all discovery … pending a ruling on the arbitration motion." Doc. #19.

The plaintiffs responded in opposition to the motion to compel arbitration on July 1,[5] Doc. #32; and Verizon replied on July 8, Doc #35. The plaintiffs did not respond to the motion to transfer venue or the motion to dismiss.

## II
## Federal Arbitration Act

The Federal Arbitration Act ("FAA") "provides that written arbitration agreements are generally 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 579 (5th

---

September 2023, an unauthorized person communicated with Verizon, and Verizon wrongfully granted access to and control over Plaintiffs' SIM card, iPhone and Verizon Account to the unauthorized person;" "[w]hile the perpetrator had control over the iPhone and Verizon Account, he/she used that control to access and reset the passwords for … Correnti's Coinbase account;" and "the cryptocurrency assets [were] transferred to external accounts out of [Correnti's] control." Doc. #1 at 6–8.

[2] At Verizon's request, the Court twice extended the deadline for Verizon to respond to the complaint. Docs. #7, #9.

[3] Verizon explains that it filed the motion to transfer venue "to preserve arguments pertaining to the forum selection clause without waiver of its right to arbitration, which is expressly reserved." Doc. #13 at 1.

[4] Similarly, Verizon specifies that it filed the Rule 12(b)(6) motion "to preserve substantive arguments without waiver of its right to arbitration which is expressly preserved," and "[s]hould this Court ever reach the merits of this motion – which it should not – the Complaint must still be denied because Plaintiffs have failed to state a plausible claim for relief." Doc. #16 at 1.

[5] The Court granted the plaintiffs' request for an extension to respond to the motion. Doc. #30.

Cir. 2020) (quoting 9 U.S.C. § 2). "A court makes two determinations when deciding a motion to enforce an arbitration agreement. First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (internal citation omitted). "When deciding whether the parties agreed to arbitrate the dispute in question, 'courts generally … should apply ordinary state-law principles that govern the formation of contracts.' In doing so, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302–03 (5th Cir. 2021) (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)).

### III
### Background

On November 18, 2013, Nicholas Air entered into a Verizon Wireless National/Major Account Agreement ("Agreement" or "MAA") with Verizon Wireless "allow[ing] [it] to purchase wireless service and equipment at discounted prices for its employees' business use and machine-to-machine data service for its own business use." Doc. #11-1 at PageID 60. The Agreement identifies the "Customer" as "Nicholas Air" and states that it "applies to lines of service activated by Customer." *Id*. The Agreement's "Dispute Resolution" section includes the provision that "the Parties agree to arbitrate any dispute arising out of this Agreement." *Id*. at PageID 65. The "Governing Law, Venue and Jurisdiction" section specifies that "the validity, construction and performance of this Agreement shall be governed and interpreted in accordance with the laws of the State of New York, without reference to its conflict of laws or other rules that would require the application of the laws of another jurisdiction." *Id*. at PageID 67.

IV
**Analysis**

In seeking to compel arbitration, Verizon submits that "[t]he Verizon account at issue in the Complaint is subject to the terms and conditions of the … Agreement … between Nicholas Air and [it] … which contains a binding dispute resolution provision requiring the parties to 'arbitrate any dispute arising out of this Agreement,'" and "[i]t cannot be disputed that Plaintiffs' claims are subject to the arbitration provision of the MAA because their claims arise out of the MAA." Doc. #11 at 1–2.

The plaintiffs respond that "[their] claims in this lawsuit do not arise out of Verizon's provision of cellular service to [them] pursuant to the … Agreement;" "[w]here claims are based on an intentional tort – as they are in this matter – courts have not compelled them to arbitration;" and "[t]he fact that two parties are in privity for the provision of certain, limited services does not permit one of them to allow a third-party to commit criminal behavior that is unrelated to the parties' agreement and, then, look to that agreement to successfully compel the dispute to arbitration." Doc. #32 at 6.

Verizon replies that the plaintiffs' "claims are clearly in scope because they directly challenge [its] performance of the contract [and] several underpinning factual allegations in the Complaint reveal that Plaintiffs' claims directly originate, stem, or result from the MAA." Doc. #35 at 3.

A. **Applicable State Law**

In determining the validity and scope of an arbitration agreement, federal courts apply the rules of contract interpretation of the state whose law governs the agreement. *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006). Because the MAA contains a New York choice of law provision

4

and because the parties agree that New York law applies,[6] the Court will apply New York substantive law to determine whether there is a valid agreement to arbitrate and if so, whether the plaintiffs' claims are within its scope.

### B. Agreement to Arbitrate

Verizon argues that "Nicholas Air expressly agreed to arbitrate its disputes with [it] when it purchased wireless services and devices from [it]," and "as the owner of Nicholas Air and an authorized user of the iPhone and Verizon Account of Nicholas Air, Mr. Correnti is also bound by the terms of the MAA, including the arbitration provision." Doc. #12 at 5–6 (internal citation omitted). The plaintiffs do not challenge the validity of the arbitration agreement or its application to them. *See generally* Doc. #32. In the absence of such challenge, the Court concludes that the plaintiffs are subject to a valid arbitration agreement with Verizon.

### C. Scope of Arbitration Agreement

Verizon argues that "[i]n addition to expressly asserting a breach of contract claim against [it] … each of Plaintiffs' claims presumes the existence of the MAA, which governs the provision of wireless service that is the basis for the instant lawsuit[, and] without the MAA, Plaintiffs would not have had the iPhone or wireless account that [it] allegedly allowed an unknown perpetrator to access." Doc. #12 at 6–7. The plaintiffs respond that "[t]here is a 'positive assurance' in this case that [their] 'reasonable expectations' in entering into the MAA with Verizon did not include Verizon aiding and abetting criminal fraud and theft[, and] Verizon's willful, wanton, and intentional conduct in effectuating the SIM swap crosses the line of what Plaintiffs ever reasonably expected to be compelled to arbitrate." Doc. #32 at 9. Verizon replies that the plaintiffs' complaint

---

[6] According to Verizon, "New York law applies pursuant to the choice-of-law provision in the MAA." Doc. #12 at 6 n.1. The plaintiffs "cite New York substantive law in support of their Opposition to [Verizon's] Motion to Compel Arbitration." Doc. #32 at 5 n.1.

5

"include[s] no claims of 'intentional tort' or 'aiding and abetting criminal fraud and theft;'" "a SIM swap is an 'ordinary course of business transaction;'" and "it is not unreasonable for Plaintiffs to contemplate that the arbitration clause would cover claims stemming from the 'Plaintiffs' iPhone, SIM card, and Verizon Account,' since that was precisely what Nicholas Air purchased from Verizon pursuant to the MAA." Doc. #35 at 1–2, 7 (internal citations omitted).

Under New York law, "[w]here the parties have agreed generally to submit to arbitration all disputes *arising out of* the contract or any dispute relating to the meaning and interpretation of the underlying agreement, they have adopted a broad arbitration clause." *Murchison Cap. Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 625 (5th Cir. 2015) (emphasis added) (quoting *Info. Scis., Inc. v. Mohawk Data Sci. Corp.*, 374 N.E.2d 624, 625 (N.Y. 1978)). "[B]road arbitration clauses create a presumption of arbitrability." *Id.* (citing *Domansky v. Little*, 770 N.Y.S.2d 288 (N.Y. App. Div. 2003)). "[W]hile the question [of arbitrability] is governed by the intent of the parties, that intent will be broadly construed, and arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 27 (2d Cir. 1995) (internal citations and quotation marks omitted) (applying New York law). "As with any contractual matter [the] main concern in deciding the scope of arbitration agreements is to 'faithfully reflect the reasonable expectations of those who commit themselves to be bound by them.'" *Id.* at 28 (quoting *Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601, 605 (2d Cir. 1991)).

The arbitration agreement here, which applies to "any dispute arising out of" the MAA, is broad. And all the plaintiffs' claims arise out of Verizon's alleged "fail[ure] to protect Plaintiffs … from being victimized by an unlawful SIM Swap." Doc. #1 at 1. The MAA contains a "SIM

6

Cards, Software Updates, Service Programming Code" provision specifying that "Verizon … may change or update the software or other data in the SIM card or the software in the Equipment over the air and utilize any capacity in the SIM card for administrative, network, business and/or commercial purposes." Doc. #11-1 at PageID 62. The MAA also has a "Customer Consent to Share CPNI" provision stating that "[t]he Federal Communications Commission … and various states require Verizon … to protect certain information that is made available to it solely by virtue of Customer's relationship with it. This information is known as Customer Proprietary Network Information." *Id*. at PageID 68. Based on these provisions, access to CPNI and transactions involving SIM cards are contemplated by the MAA, so the parties reasonably expected disputes over such matters to be covered by the Agreement's arbitration provision. More, the plaintiffs had the SIM card and Verizon account at issue, and Verizon had access to their CPNI, solely by virtue of the contractual relationship between Nicholas Air and Verizon as a result of the MAA. Considering the broad language of the arbitration provision, the Court cannot conclude that it is not susceptible of the interpretation that it covers the claims asserted here.

As for the plaintiffs' argument that arbitration agreements do not apply to claims involving "intentional conduct," the cases they cite in support of such—*Chun Choe v. T-Mobile USA, Inc*., No. SA CV 18-0648-DOC, 2018 WL 6131574, at *7 (C.D. Cal. Aug. 1, 2018), and *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*, 950 So. 2d 170 (Miss. 2007)—are irrelevant since they do not apply New York law.[7] Besides, whether an arbitration agreement applies to intentional

---

[7] Regardless, the claims in those cases are distinguishable from those in this case. In *Chun Choe*, when one of the defendant's employees was involved in a "criminal and civil conspiracy to obtain illegal access to Plaintiff's cell phone account and records," the district court found that the plaintiff's invasion of privacy claims were within the scope of the arbitration clause but that his criminal fraud, larceny, and negligence claims were beyond the agreement's scope, emphasizing that "there is a meaningful difference between torts that are factually related to the performance of the service agreement and those that are outrageous and not intended to be within the scope of the service agreement." 2018 WL 6131574, at *4–7. In *Blakeney*, which involved allegations that the defendant "committed civil fraud" and "[its] employees … engaged in a scheme of using [the plaintiff's] name to forge vehicle titles and bills of sale to sell stolen vehicles," the Mississippi Supreme Court found that "no reasonable person would agree to

7

conduct turns on the language of the arbitration agreement itself, not some general prohibition against arbitrating intentional conduct claims. *See, e.g.*, *Berger v. Cantor Fitzgerald, Inc.*, 240 A.D.2d 222, 223 (N.Y. App. Div. 1997) ("[P]laintiff's claims for intentional and negligent infliction of emotional distress are … arbitrable under the [arbitration] agreement.").

For these reasons, the Court concludes that the plaintiffs' claims are within the scope of the arbitration provision in the Agreement between Nicholas Air and Verizon.

## V
## Conclusion

Verizon's motion to compel arbitration and stay this case [11] is **GRANTED**. Verizon's motion to transfer venue [13] and motion to dismiss [16] are **TERMINATED without prejudice**. This case is **STAYED** pending arbitration. The parties are **DIRECTED** to report to the Court every ninety days regarding the status of arbitration.

**SO ORDERED**, this 27th day of January, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

submit [those claims] to arbitration." 950 So. 2d at 176, 177. Here, there are no allegations of fraud or larceny by Verizon or its employees; rather, the plaintiffs allege Verizon failed to protect their account information from a third party's criminal acts. Unlike in *Chun Choe* and *Blakeny*, the conduct alleged here is not so outrageous that it is unreasonable for the parties to expect it to be subject to arbitration.

8